# In the United States Court of Federal Claims

No. 24-1459
Filed: July 1, 2026

|  |  |
|---|---|
| TYELIN ARIEON ROBINSON, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

*Wojciech Z. Kornacki*, Pentagon Law Office, Washington D.C., for plaintiff.

*Delisa Maria Sanchez*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, for defendant.  With her on the brief was *Lieutenant Colonel Suzanne M. Dempsey*, United States Marine Corps, General Litigation Division (Code 14), Office of the Judge Advocate General.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

Servicemembers of the United States Armed Forces are afforded certain rights when defending themselves against administrative separation.  To protect these rights, each service branch has promulgated regulations that impose procedural requirements that disciplinary authorities and personnel must follow.  However, procedural errors arising from the separation process may prejudice a servicemember's defense and undermine the fairness of any subsequent proceeding.  This case concerns whether procedural violations during a servicemember's separation were harmless when the servicemember invoked or attempted to invoke certain rights that were allegedly waived.

Plaintiff Tyelin Robinson served in the United States Navy (the "Navy") from 2016 to 2022 before being separated for drug abuse.  After testing positive for a prohibited substance following a night out while on leave, Mr. Robinson asserts that the Navy violated multiple procedural regulations that prevented him from adequately defending himself during his separation process.  Mr. Robinson also alleges that the Navy lacked sufficient evidence to support its drug abuse charge against him and that a Navy Judge Advocate General provided him with ineffective counsel.  After being reinstated into the Navy in 2024, Mr. Robinson now brings this military pay dispute and

1

charges that these errors entitle him to backpay and correction of his military records.  Before the Court are the parties' cross-motions for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC").  ECF Nos. 23, 26.  For the following reasons, the Court **GRANTS** the Navy's motion, ECF No. 26, and **DENIES** Mr. Robinson's motion, ECF No. 23.

## I.      BACKGROUND

### A.  Mr. Robinson Serves in the Navy and Tests Positive for THC.

In April 2016, Mr. Robinson formally enlisted in the Navy.  *See* Administrative R. ("AR") at 205.  At the time he enlisted, Mr. Robinson signed a Drug and Alcohol Abuse Statement of Understanding in which he acknowledged that the Navy maintained a "Zero Tolerance policy toward drug and alcohol abuse," that he would be subjected to urinalysis tests, and that "a single detection of drug abuse after entry" could result in separation from the Navy.  *Id.* at 219 (quotation marks omitted).

For the next four years, Mr. Robinson demonstrated exemplary service.  *See id.* at 246–59.  He progressed from a student to a supervisor technician and earned regular and "frocked" promotions.  *See id.*  One evaluator described Mr. Robinson as "a rising star who seeks out and accomplishes all tasks ahead of schedule!"  *Id.* at 251.  Another called him "an outstanding sailor who exudes superb leadership in every endeavor!"  *Id.* at 259.  Mr. Robinson was promoted to Avionics Electronics Technician Petty Officer Second Class with a corresponding E-5 pay grade.  *Id.* at 191.  During his initial enlistment, Mr. Robinson received several medals and commendations, including the Armed Forces Service Medal, the Humanitarian Service Medal, and the National Defense Service Medal.  *Id.* at 144, 261.

After his enlistment ended, Mr. Robinson signed a new three-year contract in November 2020.  *Id.* at 260.  He continued his service aboard the USS Theodore Roosevelt and again received high marks for his service.  *Id.* at 270, 272–74.  In December 2021, Mr. Robinson reported for duty at the Fleet Readiness Center West ("FRCW") Detachment at Naval Air Station Fallon.  *Id.* at 2.  As a Calibration Technician, Mr. Robinson worked on and repaired "optical/dimensional, electronic, physical/mechanical and special support equipment."  *Id.* at 281.  To facilitate his transfer, Mr. Robinson submitted a urine sample as a matter of routine drug screening procedure.  *Id.* at 2, 43–46.  But on January 27, 2022, the results from the urinalysis test came back positive for Tetrahydrocannabinol ("THC") at twice the threshold for a positive result.  *Id.* at 7, 15, 33, 35.[1]

The following day, Mr. Robinson participated in a preliminary investigation and testified that his exposure to THC occurred during a month-long leave before his transfer to FRCW Fallon.  *Id.* at 39, 41, 147.  While on leave, Mr. Robinson visited a nightclub called McClouds and vaped with his fellow sailors, an activity "honestly done religiously amongst individuals that go there."  *Id.* at 41.  As they continued to drink and vape, Mr. Robinson and his colleagues began passing around their different vape devices, including some provided by civilians.  *Id.* at 37, 41.

---

[1]      THC "is believed to be the main ingredient that produces the psychoactive effect" in marijuana.  *See    Marijuana*,    United    States    Drug    Enforcement    Administration, https://www.dea.gov/factsheets/marijuana, (last visited June 17, 2026).

Throughout the night, he vaped from his own device and vapes belonging to others, one of which may have allegedly contained an illegal substance. *Id.* at 37, 42. While "[it] may sound farfetched," Mr. Robinson believed that his exposure was "without a doubt unintentional and I know I never willingly consumed or inhaled any THC/CBD." *Id.* at 41–42. After his one-day investigation, a Preliminary Investigator concluded that Mr. Robinson became "exposed to THC while vaping prior to reporting to FRCW Det Fallon but is not being truthful about the entire situation." *Id.* at 36–37. Mr. Robinson's investigator also noted that "[h]is lack of situational awareness and carelessness possibly led to his exposure to THC," but recommended further disciplinary action. *Id.* at 36.

### B. Separation from Service and Subsequent Re-Enlistment.

On February 15, 2022, the Navy notified Mr. Robinson that he would face separation proceedings for drug abuse. *Id.* at 32. Legal Chief Matthew Nunn served Mr. Robinson with a NAVPERS 1910-31 form which advised him of his rights, among others, to "consult with qualified counsel" and to submit written statements for the separation authority to consider.[2] *Id.* at 33, 146. That form also suspended his separation proceedings for two days to give him an opportunity to exercise those rights. *Id.* at 34. Failure to respond to the NAVPERS form would result in "a waiver of all rights and processing may continue in [Mr. Robinson's] absence." *Id.* Mr. Robinson told Chief Nunn that he wanted to speak to an attorney before signing the form. *Id.* at 146. However, Chief Nunn wrote "member refused to sign" on his NAVPERS form that same day which initiated his separation process and allegedly waived his rights. *Id.* at 34–35. According to Mr. Robinson's mother, who served in the Navy and who listened in on the conversation, Chief Nunn "said it would not matter anyway" that he signed on her son's behalf. *Id.* at 150.

Soon after, Mr. Robinson sought legal counsel from Lieutenant Mehra, a Navy JAG based in Lemoore, California.[3] *Id.* at 147, 151. Lieutenant Mehra allegedly told him that "something was wrong about the process and that I should be given more time." *Id.* at 147. She also promised to contact Mr. Robinson's commanding officer to re-start the separation process. *Id.* Based on her representations, Mr. Robinson collected character references in support of his retention and sent them to Lt. Mehra. *Id.* at 176–88. However, Lt. Mehra stopped responding, did not submit the character letters to the separation authority, and eventually told Mr. Robinson's mother to stop sending her the letters. *Id.* at 9, 147, 150. On March 1, 2022, the separation authority recommended that Mr. Robinson be discharged for drug abuse. *Id.* at 144. The recommendation was adopted and fully executed in April 2022, resulting in Mr. Robinson receiving a general discharge under honorable conditions. *Id.*

After his separation from the Navy, Mr. Robinson petitioned the Naval Discharge Review Board ("NRDB") for equitable relief. *Id.* at 67–74. NDRB retains jurisdiction to review an applicant's discharge and may change a servicemember's character of service and the reason for discharge when appropriate. *Id.* at 125. In September 2023, NDRB concluded that Mr. Robinson's "discharge was improper and clemency was warranted." *Id.* at 126. As a result, the Board (1) changed the characterization of his discharge to "Honorable;" (2) adjusted the narrative of his

---

[2]     The administrative record appears to state Legal Chief Nunn's position as "AMC." AR at 35. At times, Mr. Robinson refers to Chief Nunn as a "clerk."

[3]     The record also does not list a full name or official title for Lt. Mehra.

discharge to "Secretarial Authority;" and (3) changed his reentry code to "RE-1."  *Id.*  Mr. Robinson then returned to active duty in May 2024.

## II.    PROCEDURAL HISTORY

Mr. Robinson filed this suit in September 2024 seeking back pay from April 1, 2022, to May 24, 2024, and correction of his military records.  *See* Compl., ECF No. at ¶ 1.  In January 2025, the parties moved to remand this case back to the Board for Correction of Naval Records ("BCNR").  *See* Joint Mot. to Remand, ECF No 9.  Remanding this case "would allow Mr. Robinson to seek relief from . . . the only entity within the Navy" that retains jurisdiction to hear his claims.  *Id.* at 4.  It would also "create a thorough record for the Court's benefit" if BCNR denied him relief and would comply with required procedures.  *Id.*  Thereafter, the Court granted the parties' motion and remanded this matter to BCNR.  *See generally* Order Granting Mot. to Remand, ECF No. 10.

### A.  The Office of Judge Advocate General Issues an Advisory Opinion.

Upon receipt of Mr. Robinson's materials, BCNR requested an advisory opinion from the Office of the Judge Advocate General ("OJAG").  AR at 5, 77–80.  In its opinion, OJAG concluded that Mr. Robinson did not receive ineffective assistance of counsel under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.* at 77.  According to OJAG, Mr. Robinson was not subject to criminal proceedings, and he filed no formal complaint against Lt. Mehra, which left him with just "vague assertions."  *Id.* at 77–78.  The advisory opinion also held that the Navy did not violate Mr. Robinson's due process rights.  *Id.* at 78.  Even though the Navy failed to give Mr. Robinson two business days to prepare a response to his separation, it did not send his separation package for final processing until March 1, 2022.  *Id.*  During that time, Mr. Robinson consulted with counsel and he could have submitted character statements to the separation authority himself.  *Id.*  OJAG further opined that the Navy did not abuse its discretion in separating Mr. Robinson.  *Id.* at 79–80.  The advisory opinion noted that Mr. Robinson's character letters that "were not considered by the separation authority" lacked potential eyewitnesses or details that could corroborate his innocent ingestion theory.  *Id.* at 80.

### B.  BCNR's Opinion and Subsequent Proceedings.

On August 27, 2025, BCNR issued its opinion and denied Mr. Robinson relief.  *See id.* at 1–13.  The Board first held that sufficient evidence justified his discharge for drug abuse.  *Id.* at 6–7.  According to BCNR, Mr. Robinson's commanding officer reasonably determined that his ingestion of THC was not innocent based on available evidence.  *Id.* at 7.  On this issue, BCNR concluded that Mr. Robinson "exaggerated the favorable findings" from his preliminary investigation and he "went out of [his] way" to absolve his military peers "when it would be impossible to know whether the THC in question came from one of them if [his] ingestion was actually innocent."  *Id.* at 7.  Since he failed to acknowledge his charge for separation, Mr. Robinson also deprived himself of a forum to raise his innocent ingestion defense "and therefore shift[] the burden to disprove it to the Government."  *Id.*  BCNR further concluded that Mr. Robinson disobeyed an order to attend a Transition Assistance Program which diminished his credibility.  *Id.* at 8.  Finally, the Board found that Mr. Robinson "misrepresented the nature" of

his investigator's findings to NDRB which raised doubts "regarding the basis for the NDRB's conclusions." *Id.*

BNCR then determined that the Navy failed to afford Mr. Robinson his right to consult with counsel before electing his NAVPERS rights. *Id.* at 8. Nevertheless, BCNR found this failure to be harmless error. *Id.* The Board also held that the Navy did not violate Mr. Robinson's right to suspend his separation proceedings for two days so he could respond to his NAVPERS form. *Id.* at 8–9. Since nine days passed before the Navy acted upon Mr. Robinson's separation, he received more time to exercise his rights under NAVPERS "than [he was] entitled to." *Id.* As for his substantive rights under NAVPERS, Mr. Robinson consulted with Lt. Mehra and gathered character references that he "inexplicably returned" to her "rather than to command." *Id.* at 9. Taken together, the Board concluded that Mr. Robinson waived his rights during his separation by his own omissions. *Id.*

BCNR also rejected Mr. Robinson's ineffective assistance of counsel claim against Lt. Mehra. *Id.* In addition to not filing a complaint against her, the Board noted that his right to counsel extended to consultation, not representation under NAVPERS. *Id.* at 10. BCNR again blamed Mr. Robinson for "inexplicably" sending the character references to Lt. Mehra—who was located over 300 miles away—when she "had no further responsibility regarding [his] case." *Id.* at 11. Finally, the Board declined to grant Mr. Robinson additional equitable relief after NDRB granted him clemency following his separation. *Id.* at 12. In declining to grant this relief, BCNR noted that NDRB's decision to upgrade Mr. Robinson's characterization of service "essentially eliminated the adverse consequences of misconduct which was supported by the evidence." *Id.* Mr. Robinson's separation further allowed him to escape professional consequences at FRCW Fallon and additional relief would grant him a financial "windfall." *Id.* at 12.

Following BCNR's opinion, Mr. Robinson requested that this Court review the Board's decision. Joint Mot. to Lift Stay and Proposed Schedule or Proceedings, ECF No. 19 at 2. Following a lapse in Government appropriations and an adjusted scheduling order, Mr. Robinson filed his amended complaint in January 2026. *See* Scheduling Order, ECF No. 20; Am. Compl., ECF No. 22. He submitted his motion for judgment on the administrative record later that month. Pl.'s Mot. for J. on the Administrative R., ECF No. 23. Defendant filed its response and cross-motion for judgment on the administrative record in March 2026. Def.'s Resp. and Cross-Mot. for J. on the Administrative R., ECF No. 26. The parties further exchanged reply briefs and briefing concluded in mid-April 2026. Pl.'s Reply in Support of Mot. for J. on the Administrative R., ECF No. 27; Def.'s Reply in Support of Cross-Mot. for J. on the Administrative R., ECF No. 28.

## III.    LEGAL STANDARDS

### A. Scope of Review.

The Tucker Act grants this Court with jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act "does not [] provide the substantive cause of action; instead" a plaintiff must identify a separate money-mandating source of law to establish jurisdiction. *See Chambers*

*v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).  "It is well established that the Military Pay Act is a money-mandating statute." *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004); *see* 37 U.S.C. § 204.  The court may also "order the correction of military records" that are "incident of and collateral to its award" of monetary damages.  *See Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1998); 28 U.S.C. § 1491(a)(2).

Courts review military pay disputes under the same standard as any other agency action. *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006).  That means a plaintiff must show by "cogent and clearly convincing evidence" that a correction board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986).  A correction board acts in an arbitrary and capricious manner when it "entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Kelly v. United States*, 69 F.4th 887, 894–95 (Fed. Cir. 2023).  While many forms of this standard of review exist, courts are generally "concerned with whether the correction board's decision is procedurally fair and supported by *substantial evidence*." *Tippett v. United States*, 98 Fed. Cl. 171, 177 (2011) (emphasis added).  Substantial evidence entails "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619 (1966).  Servicemembers "must also overcome the presumption of regularity which attaches to the actions of [a correction board]." *Miller v. United States*, 119 Fed. Cl. 717, 725–26 (2015) (citing *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011)).

The military is granted "substantial deference in the governance of its affairs." *Dodson v. United States Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993); *Voge*, 844 F.3d at 766 ("Judicial deference must be 'at its apogee' in matters pertaining to the military and national defense.").  Indeed, "judges are not given the task of running the Army." *Antonellis v. United States*, 723 F.3d 1328 1332 (Fed. Cir. 2013).  This Court does not serve as a 'super correction board' responsible for determining which service members are fit to serve" either.  *Grooms v. United States*, 113 Fed. Cl. 651, 660 (2013).  In practice, courts "cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *see id.* at 1157 (refusing to reweigh evidence in these matters and instead determining whether the conclusion "is supported by substantial evidence.").  However, this deferential standard of review still requires administrators to provide an explanation that forms a "rational connection between the facts found and the choice made." *See Verbeck v. United States*, 89 Fed. Cl. 47, 63 (Fed. Cl. 2009) (citing *Heisig v. United States*, 719 F.2d at 1156).

## B.  Motion for Judgment on the Administrative Record.

Under RCFC 52.1, "a motion for judgment on the administrative record examines whether the administrative body, given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013).  Courts are required "to make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum*,

404 F.3d at 1356. Unlike a motion for summary judgment, genuine issues as to a material fact do not preclude the Court from entering judgment. *Id.* at 1355–56; *see id.* at 1356 (opining that "proceeding under RCFC [52.1] merely restricts the evidence to the agency record. . . ."). Thus, courts must determine whether a party satisfied its burden of proof based on the record. *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed Cir. 2018).

## IV.    DISCUSSION

### A. Since Mr. Robinson Failed to Provide Reliable, Exculpatory Evidence, the Navy Reasonably Initiated Separation Proceedings for Drug Abuse.

First, BCNR upheld the Navy's finding that sufficient evidence supported Mr. Robinson's drug abuse charge. AR at 6–8. Based on the evidence presented, the Board held that his commanding offer made a reasonable determination and could infer knowing ingestion of THC. *Id.* In response, Mr. Robinson raises multiple questions presented in his opening brief that seem to address BCNR's decision toward his drug charge. *Id.* at 4–5. Those questions are not answered in his argument section. After reviewing Mr. Robinson's materials, he appears to devote his entire argument toward establishing his procedural defect claims. ECF No. 23 at 15–18. He does mention NDRB's conclusion that defendant lacked sufficient evidence to sustain his drug charge. *Id.* at 16 (citing AR at 69). But instead of reconciling NDRB's opinion with his drug charge, Mr. Robinson used such statement to reinforce his procedural violation arguments. *See id.*[4]

Skeletal arguments, "really nothing more than an assertion, does not preserve a claim." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (citations omitted). This Circuit recognizes that perfunctory and undeveloped arguments may be waived and not considered. *SmartGene, Inc. v. Advanced Biological Lab'ys, SA*, 555 F. App'x 950, 954 (Fed. Cir. 2014); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009); *Patrick v. Fed. Deposit Ins. Corp.*, No. 2024-1962, 2026 WL 682235, at *5 (Fed. Cir. Mar. 11, 2026). Indeed, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Dunkel*, 927 F.2d at 956. Waived arguments include those first raised in a background section, footnote, or reply brief. *See Seventh Dimension, LLC v. United States*, 161 Fed. Cl. 110, 129 (2022); *United States v. Ford Motor Co.*, 463 F.3d 1267, 1276–77 (Fed. Cir. 2006). The Court doubts whether Mr. Robinson developed any argument toward this issue. Nonetheless, the Court holds that substantial evidence confirms BCNR's finding to uphold Mr. Robinson's drug abuse charge.

"Standing alone, a positive urinalysis [test] may be legally sufficient to sustain a conviction for wrongful use of a controlled substance, even in the face of evidence offered by the defense." *Chipimarquez v. United States*, No. 24-887C, 2025 WL 2618982, at *9 (Fed. Cl. Sept. 10, 2025) (citing *United States v. Hobbs*, 62 M.J. 556, 558–59 (A.F. Ct. Crim. App. 2005); *United States v. Ford*, 23 M.J. 331, 332 (C.M.A. 1987)). In some contexts, a positive result allows corrections boards to infer knowing and wrongful use. *See Hodges v. United States*, 35 Fed. Cl. 68, 77–78

---

[4]    In his reply brief, Mr. Robinson contended that BCNR "arbitrarily concluded that the NDRB had incorrect information to conclude that the evidence was insufficient." ECF No. 27 at 21. He followed this proposition with "the AR shows that the NDRB received the investigation in question." *Id.* Not only does this reasoning fail to qualify as a developed argument, but the Court questions also whether that statement *is* an argument.

(1996); *Wade v. United States*, 716 F. App'x 943, 947–48 (2017).  The Federal Circuit's decision in *Wade* proves instructive.  There, a servicemember tested positive for cocaine following a urinalysis test and expert confirmation that his medication did not cause that result.  *Wade*, 716 F. App'x at 943–44.  At a non-judicial hearing, the servicemember testified that "[he had] not and will not ever use any type of illegal drugs intentionally."  *Id.* at 944.  To support an innocent ingestion theory, he speculated "that he may have unknowingly ingested cocaine because his drink might have been spiked."  *Id.*  Unconvinced, the Federal Circuit concluded that "the factfinder was free to discredit" the innocent ingestion theory because of the servicemember's positive test and instances of untruthfulness.  *Id.* at 948.  His submission of character evidence also failed "to undermine the substantial evidence" that supported his charge.  *Id.*

In this case, Mr. Robinson does not challenge the validity of his urinalysis test.  *See* AR at 7, 43–46.  Following his test, which "found THC at more than twice the threshold for a positive result," Mr. Robinson consented to a preliminary investigation.  *Id.* at 7, 30.  But he waived "the opportunity to present [sic] further evidence to the OIC" to assist his case.  *Id.* at 30.  Instead, Mr. Robinson provided a statement of self-serving testimony that failed to persuade his commanding officer and the separation authority that he unknowingly ingested THC.  *See id.* at 41.  Like the servicemember in *Wade*, Mr. Robinson surmised that his drug use "is without a doubt unintentional and I know I never willingly consumed or inhaled any THC/CBD."  *Id.*  He further attributed his positive test to sharing vape devices with civilians while absolving his military peers of any wrongdoing.  *Id.* at 40–41.  On these lines, his "farfetched" explanation alone cannot serve as the only evidence to prove innocent ingestion.  *Id.* at 7.  BCNR could also use his untruthfulness when he skipped a mandatory Transition Assistance Program course as bearing on his credibility.  *Wade*, 716 F. App'x at 948; *see also* AR at 35.  Against this evidence, Mr. Robinson's commanding officer made a reasonable determination based on the investigation and urinalysis test results.  *Id.*; AR at 7.  And without reliable exculpatory evidence, BCNR did not err in its conclusion.[5]

The Court also agrees with BCNR that Mr. Robinson misplaces his reliance on his investigator's finding that his "lack of situational awareness and carelessness *possibly*" caused his exposure to THC.  AR at 37 (emphasis added).  That statement is taken out of context and disregards the investigator's conclusion that he was being untruthful about his drug use.  *Id.* at 37.  While neither party provides authority regarding NDRB's persuasive value, BCNR could ignore its adoption of Mr. Robinson's representations of his investigation.  *Id.* at 68; *Wade*, 716 F. App'x at 948.  Mr. Robinson further takes issue with the preliminary investigator's "hasty" one-day investigation.  ECF No. 23 at 16.  But he has not identified what the investigator should have done differently.  Again, after waiving his right to present evidence, Mr. Robinson's statement to the investigator disclaimed his peers from trouble and assigned blame to unidentified civilians.  It seems unreasonable for the investigator to track down witnesses who Mr. Robinson refused to

---

[5]    Defendant's brief makes multiple references to Mr. Robinson's amended complaint when attacking his positions.  *See generally* ECF No. 26.  Defendant did not include this pleading in the administrative record which limits this Court's judicial review.  *See CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 479 (2013).  The Court hereby ignores any arguments flowing from his amended complaint or materials outside the record.

identify or seek physical evidence that has now disappeared. AR at 7.[6] Under these circumstances, his actions during the investigation also gave the investigator no reason to inquire further.

Therefore, the Court holds that Mr. Robinson failed to demonstrate that BCNR erred when the Board determined that adequate evidence supported the Navy's drug abuse charge against him.

### B. While the Navy Violated Some of Mr. Robinson's Procedural Rights, Such Violations Were Harmless.

Mr. Robinson next asserts that the Navy failed to comply with numerous regulations that would invalidate his separation. ECF No. 23 at 15–18. He also challenges BCNR's conclusion that such defects amounted to harmless error. *Id.* The Court will address each alleged violation in turn.

"It is well established that the military departments, like other federal agencies, are bound by their own regulations." *Rogers v. United States*, 124 Fed. Cl. 757, 767 (2016) (citing *Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004); *Service v. Dulles*, 354 U.S. 363, 388 (1957)). While Congress gives the United States Armed Forces significant deference "in conducting its affairs, the military is bound to follow its own procedural regulations should it choose to promulgate them." *Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005); *see Voge*, 844 F.2d at 779 (mandating compliance even if government officials "were not compelled to have them at all."). Although some claims present justiciability issues, "the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations.'" *Goodwin v. United States*, 338 F.3d 1374, 1378 (Fed. Cir. 2003); *Lindsay v. United States*, 295 F.3d 1252, 1257–58 (Fed. Cir. 2002).

However, strict compliance with procedural requirements "is not required where the error is deemed harmless." *Wagner*, 365 F.3d at 1361. Under this harmless error standard, two lines of cases stand out. *Id.* First, matters involving "substantive errors contained in a serviceman's military record" should be reviewed for harmless error. *Id.* at 1362. Second, suits alleging "procedural errors regarding the composition of military selection boards" should not apply this standard. *Id.* Harmless error also does not apply when the "magnitude of the effect of the error on the proceeding defies assessment by a reviewing body." *Id.* at 1364. Regardless, a plaintiff must "either make a showing that the defect substantially affected the decision to separate him," or at least "set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action." *Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003).

---

[6]    Mr. Robinson further contends that BCNR arbitrarily concluded that he covered for his peers "when there is no such evidence." ECF No. 23 at 17. The Board pulled this conclusion from his investigator's conclusions and his statement that absolved his military peers of repercussions without any explanation to support his reasoning.

**1. The Navy did Not Violate MILPERSMAN 1910-146 Because Mr. Robinson Does Not Challenge the Process Under Which His Commanding Officer Reached a Decision.**

MILPERSMAN 1910-146 provides for mandatory processing should a servicemember receive a positive result for a prohibited substance on a urinalysis test. However, a servicemember may avoid separation proceedings if their positive test arose from administrative errors or unknowing ingestion. This determination is made by a servicemember's commanding officer. MILPERSMAN 1910-146 at 1. BCNR did not address this regulation in its opinion. But for reasons discussed above, the Court holds that the Navy did not violate MILPERSMAN 1910-146. *See* AR at 8–9.

Mr. Robinson proposes that NDRB's finding that "the Government did not have sufficient evidence to show intentional ingestion" establishes a violation of MILPERSMAN 1910-146. ECF No. 23 at 16; *see* AR at 69. In his submissions to BCNR, Mr. Robinson represented that his "preliminary inquiry established that [he] was exposed to THC through lack of situational awareness and carelessness." AR at 25, 115, 130, 140. He later challenges defendant's *statement of facts* that failed to cite this information and that the Board "erroneously noted that the Navy had a zero tolerance for drug use." ECF No. 27 at 2, 9. None of these arguments address his commanding officer's decision-making process. In substance, Mr. Robinson attacks the outcome of his commanding officer's determination rather than the process employed in reaching that decision. *See* ECF No. 26 at 17–19. However, this Court has already held that BCNR reasonably determined that substantial evidence supported Mr. Robinson's drug abuse charge. *See supra* Section IV.A. Since NDRB's decision came months after his commanding officer's decision, Mr. Robinson also cannot retroactively cite NDRB's conclusion that insufficient evidence supported his drug charge either. And the Navy indeed does maintain a zero tolerance policy toward drug use. AR at 219–20.

Defendant discusses justiciability issues relating to military pay claims and argued that Mr. Robinson's "injustice allegations are matters vested solely within the board's military discretion." *Id.* at 12–14. However, the Navy does not identify which of Mr. Robinson's claims are non-justiciable. Courts typically review the justiciability of military pay claims under RCFC 12(b)(6), not on the administrative record or under RCFC 12(b)(1). *See Winston v. United States*, 177 Fed. Cl. 304, 318 n. 18 (2025). Procedural violations in which regulations lack objective "tests or standards for the court to apply" are non-justiciable. *Antonellis v. United States*, 723 F.3d 1328, 1334 (Fed. Cir. 2013) (citations omitted); *see also Gilligan v. Morgan*, 413 U.S. 1, 5–6, 8 (1973). Here, vesting a commanding officer with discretion to determine whether a positive urinalysis test resulted from administrative error or innocent ingestion does not provide an objective standard that the Court may use. *See Driscoll v. United States*, 158 Fed. Cl. 399, 409 (2022), *opinion supplemented on denial of recons.*, No. 19-1640, 2022 WL 3330432 (Fed. Cl. Aug. 11, 2022) (finding review of a regulation that gave Army discretion to transfer certain documents based on the best interests of the Army as non-justiciable). In this instance, Mr. Robinson's procedural violation should be dismissed as non-justiciable. But his flawed argumentation suffices as an independent ground for dismissal of his claim as well.

**2. The Violation of Mr. Robinson's Right to Consultation Before Electing His NAVPERS Rights and To Suspend His Separation for Two Days were Harmless.**

Mr. Robinson also alleges that the Navy violated MILPERSMAN 1910-406 and 1910-408 which "tainted the entire separation process." ECF No. 27 at 18; ECF No. 23 at 15–16. Under MILPERSMAN 1910-406, a servicemember may consult with counsel before *electing their rights* when facing separation proceedings. In connection with this right, MILPERSMAN 1910-408 grants active duty servicemembers a minimum of two days to respond to a notice of processing. NAVPERS 1910-31 incorporates these provisions by advising that separation proceedings will be suspended for two days to allow servicemembers time to exercise their rights. AR at 34.

According to Mr. Robinson, Legal Chief Nunn's actions prevented him from consulting with an attorney before electing his rights. ECF No. 23 at 16.[7] BCNR conceded that the Navy violated MILPERSMAN 1910-406, but that such error was harmless. AR at 8–9, 16. At the same time, the Board rejected Mr. Robinson's argument that the Navy violated MILPERSMAN 1910-408 because nine days passed between his notification of separation and further action of his processing. *Id.* at 8–9. Put differently, the Navy erred by failing to provide Mr. Robinson with the right to consult with counsel, not two days to respond to his notification of separation. *Id.* at 9.

Regarding MILPERSMAN 1910-406, the Court agrees with BCNR that any error by the Navy was harmless because it did not deprive Mr. Robinson of his substantive rights available under NAVPERS. AR at 8. Under the harmless error standard, this Court cannot void a separation based on the mere existence of a procedural violation. Without further explanation, the fact that Mr. Robinson did not speak to Lt. Mehra until after Chief Nunn signed his NAVPERS form does not establish that the separation authority would have reached a different conclusion. *Christian*, 337 F.3d at 1343.

BCNR's determination that the Navy did not violate MILPERSMAN 1910-408 presents a closer call. Because nine days elapsed between his notification of separation and further action being taken, the Navy provided Mr. Robinson with more time than the two-day minimum under MILPERSMAN. *Id.* at 9. However, it remains undisputed that the Navy did not give him any time to elect his NAVPERS rights. Any *subsequent* invocation of Mr. Robinson's NAVPERS rights does not excuse the Navy's failure for not suspending his separation proceedings for two days. Thus, BCNR erred in determining that the Navy did not violate MILPERSMAN 1910-408. Regardless, Mr. Robinson does not elaborate how delaying his separation from February 15, 2022, to February 17, 2022, would have substantially affected the separation board's decision with respect to *time*. Instead, he appears to take issue with his rights under NAVPERS 1910-31 (discussed below), not that he lost two days to *decide* whether to elect those rights. Without further analysis, his argument amounts to a speculative and conclusory assertion. Therefore, the Court finds that BCNR maintained a rational basis in finding that the Navy's violation of MILPERSMAN 1910-406 was harmless error. The Court also concludes that BCNR erred in finding that no violation of MILPERSMAN 1910-408 occurred, but that procedural defect was also harmless.

---

[7] By contrast, defendant seems to advance that MILPERSMAN 1910-406 provides a narrower right than what Mr. Robinson asserts. ECF No. 26 at 24–26. Since the real issue for this claim revolves around the timing of electing rights as opposed to the scope of representation, the Navy's argument is inapposite.

### 3. Chief Nunn Did Not Waive Mr. Robinson's Rights and Mr. Robinson Invoked, or Took Steps to Invoke, His Rights Under NAVPERS.

Mr. Robinson then alleges that he could not invoke his NAVPERS rights because Legal Chief Nunn wrote "member refused to sign" on his form without his consent. ECF No. 23 at 15–16; *see also* AR at 9, 33, 147, 150. But for that error, Mr. Robinson contends that he would have been able to submit responses and review evidence that would be used against him. ECF No. 23 at 16; ECF No. 27 at 22.[8] Nonetheless, BCNR held that Chief Nunn's actions "ultimately had no adverse effect upon [his] ability to exercise those rights." *Id.* at 9. Instead, Mr. Robinson waived his NAVPERS rights by failing to invoke them before he was recommended for separation. *Id.*

Relevant to this case, Mr. Robinson's rights included (1) to consult with counsel; (2) "to submit a written statement for consideration by [the] separation authority;" and (3) to obtain copies of documents that would support his proposed separation. *Id.* at 33. In addition to his NAVPERS rights, the Court determined that Mr. Robinson alleged violations of Department of Defense Instruction ("DODI") 1332.14 and MILPERSMAN 1910-402. ECF No. 23 at 15; ECF No. 27 at 18.[9] MILPERSMAN 1910-402 first appears in Mr. Robinson's reply brief, and he failed to argue how the Navy violated that regulation. ECF No. 27 at 18. That provision also does not provide objective tests and standards to support a justiciable claim. *Antonellis*, 723 F.3d at 1334. Paragraph 5.2 of DODI 1332.14 reiterates notification procedures, though Mr. Robinson does not state which part the Navy violated.

As a reminder, this Court cannot substitute its own judgment for BCNR's because it may have reached a different conclusion. *Heisig*, 719 F.2d at 1156. Indeed, the Court agrees that Chief Nunn's actions caused some interference with Mr. Robinson's ability to exercise his NAVPERS rights at the outset. After careful consideration, the Court finds that BCNR's decision regarding Mr. Robinson's NAVPERS rights rests on substantial evidence.

While BCNR could have written in clearer terms, it appears to acknowledge that Legal Chief Nunn's signature did not effectuate a waiver of Mr. Robinson's rights. *See* AR at 9. In this instance, waiver means "the intentional relinquishment or abandonment of a known right." *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) (quotations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). These types of waivers "must be voluntary, knowing, and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Anderson v. United States*, 59 Fed. Cl. 451, 458 (2004). Other Courts in this Circuit have addressed scenarios where a servicemember asserted that they *did not* waive their rights. *See id.*; *Williams v. United States*, 100 Fed. Cl. 263, 273–74 (2011); *Warner v. United States*, 103 Fed. Cl. 408, 413 (2012); *Gant v. United States*, 63 Fed. Cl. 311, 317–19 (2004), *aff'd*, 417

---

[8]     Mr. Robinson does mention the right to a general court martial convening authority under NAVPERS, but he cites it to prove that BCNR did not list every right under NAVPERS. ECF No. 27 at 21. Since Mr. Robinson does not assert this right was violated or assert that he intended to request a court-martial convening authority, the Court will treat this point as a non-issue. *See Dunkel*, 927 F.2d at 956.

[9]     Defendant rebuts DODI 1332.14 as being capable of voiding Mr. Robinson's separation because "it does not impose an 'automatic reversal' remedy." ECF No. 26 at 31. But as this Circuit's caselaw provides, procedural errors may void a servicemember's separation if a defect was prejudicial and cannot satisfy the harmless error standard. *Wagner*, 365 F.3d at 1361.

F.3d 1328 (Fed. Cir. 2005).  Here, Mr. Robinson intends to do the opposite and asks the Court to recognize his initial waiver.

Since Chief Nunn signed his NAVPERS 1910-31 form without his consent, Mr. Robinson's purported waiver was neither voluntary nor intentional.  *Olano*, 507 U.S. at 733; AR at 33.  He also offers no authority that allows a plaintiff to rely on such a waiver to establish their claim.  Therefore, Mr. Robinson retained his NAVPERS rights at the start of his separation process.  It appears that Lt. Mehra attempted to re-start Mr. Robinson's separation.  AR at 147, 150.  However, she apparently failed to advise him that his wavier may have been ineffective.  *Id.*  Due to this alleged miscommunication, Mr. Robinson blames Lt. Mehra and the Navy for their failure to re-notify him of his NAVPERS rights.  ECF No. 23 at 16; ECF No. 27 at 20, 22.  Aside from one-sided testimony and correspondence, the administrative record lacks evidence that substantiates Lt. Mehra's representations to Mr. Robinson.  *See generally* AR.  Still, Mr. Robinson identified no procedure, statute, or MILPERSMAN provision that requires a servicemember to be re-notified of their rights.

As a fallback position, Mr. Robinson seems to recognize that Chief Nunn's actions did not waive his rights.  ECF No. 27 at 22.  He raised that argument to bolster his ineffective assistance of counsel claim.  *See infra* Section IV.C.  While Mr. Robinson relied on Lt. Mehra for support, his NAVPERS form did not require him to exercise his rights through counsel.  Instead, he retained sole discretion to invoke those rights.  By failing to act, Mr. Robinson waived his NAVPERS rights due to his omissions, not Legal Chief Nunn's conduct.  Indeed, the United States Court of Appeals for the Third Circuit has commented that an attorney or tribunal's failure to advise a plaintiff of their administrative rights does not constitute a waiver.  *Alexander-Mendoza v. Att'y Gen. United States*, 55 F.4th 197, 207–09, 211 (3d Cir. 2022); *Richardson v. United States*, 558 F.3d 216, 219, 221–22 (3d Cir. 2009).  Furthermore, Mr. Robinson does not argue, nor present evidence, that he attempted to alert his superiors about Legal Chief Nunn's actions.  He did not seek to revise his NAVPERS form, and in the case of his character letters did not attempt to send them either.  The Court acknowledges Mr. Robinson's mistaken belief that he could not exercise his NAVPERS rights.  But "it is a 'well-established rule that a citizen is presumed to know the law, and that ignorance of the law will not excuse.'"  *Warner v. United States*, 103 Fed. Cl. 408, 414 (2012).  And in this case, it seems inappropriate to enforce an ineffective waiver when Mr. Robinson also "exercised or took steps to exercise," those rights.  *Id.* at 9.[10]

Mr. Robinson does not describe what "responses" he would have provided, but context suggests that means his character letters.  *See* ECF No. 23 at 15–18.  Between his notice of processing and recommendation for separation, Mr. Robinson gathered his references as part of his defense.  AR at 8–9.  But instead of transmitting the letters to the separation authority, he "inexplicably" sent them to Lt. Mehra.  *Id.* at 9.  After Lt. Mehra ceased communication with him, she later told Mr. Robinson's mother to stop sending her the character references.  *Id.* at 11.  Again, the Court notes that Chief Nunn's actions added confusion to the separation process.  Yet, Mr. Robinson assumed full responsibility for exercising his NAVPERS rights.  His failure to act, not Chief Nunn's signature or Lt. Mehra's omissions, prevented his reference letters from reaching the

---

[10]    For instance, Mr. Robinson did consult with counsel by speaking to Lt. Mehra after he received notification of separation, a right afforded under NAVPERS.  *Id.* at 9, 33, 147, 151.

separation authority. This matter also differs from this Court's decision in *Driscoll*. There, the Army initially rejected certain mitigation and extenuation documents submitted by a servicemember during his separation. *See Driscoll*, 158 Fed. Cl. at 411. By causing those documents to be sent after a deadline passed, harmless error did not apply because the Court could not ascertain how the separation authority considered the materials. *Id.* at 412. Here, the Court cannot determine the magnitude of Mr. Robinson's unsubmitted character references due to his conduct, not because Chief Nunn waived his rights. *Christian*, 337 F.3d at 1343. This issue may have reached a different result had Mr. Robinson submitted his character references and the separation authority disregarded his materials. *See Driscoll*, 158 Fed. Cl. at 411–12. However, these facts are not before the Court.[11]

While Mr. Robinson did not review materials that would be used against him for his separation, he previously waived the opportunity to provide additional evidence during his preliminary investigation. AR at 30. The only evidence in the record that supported his separation was his positive drug test and his preliminary investigator's findings. Under these circumstances, Mr. Robinson fails to explain how reviewing those materials would have changed the separation authority's decision. There is no indication that he requested that evidence or that he asked Lt. Mehra to obtain those materials on his behalf either. Thus, Mr. Robinson's subsequent inaction limited his ability to review evidence as provided by his NAVPERS form. His speculation as to what he would have done also fails to satisfy his burden to set aside BCNR's judgment. On similar lines, Mr. Robinson asserts that the Navy relied on his waiver to separate him. *See id.*; ECF No. 27 at 18–19. He once again raises a new argument in his reply brief. When read in full, the Navy based its decision on Mr. Robinson's positive urinalysis test, a lack of exculpatory evidence, and the Navy's zero tolerance toward drug offenses. ECF No. 27 at 18–19.

Therefore, the Court concludes that BCNR reasonably found that the Navy's procedural violations toward Mr. Robinson's separation process amounted to harmless error.

### C. Because This Matter Does Not Implicate Criminal Proceedings, Mr. Robinson's Ineffective Assistance of Counsel Claim Fails as a Matter of Law.

Mr. Robinson further lodges an ineffective assistance of counsel claim against Lt. Mehra. On review, BCNR held that Lt. Mehra's representations and conduct did not cause any error or injustice and that she went "above and beyond what was required of her." *Id.* at 11. Despite BCNR's imprecise analysis, the Court finds that Mr. Robinson cannot properly assert this claim.

At the outset, neither party addressed this claim in-depth. In his opening brief, Mr. Robinson failed to provide any military regulation, statute, or cognizable source of law to use as a standard. *Id.* Neither did defendant. *See* ECF No. 26 at 24–26. Mr. Robinson then makes a

---

[11]    Caselaw that Mr. Robinson used in his legal standard section and briefly touched upon in his argument section regarding harmless error is also distinguishable from his case. *See Lowry v. United States*, 153 Fed. Cl. 300, 316 (2021) (concluding that procedural error by failing to notify servicemember of charges did not amount to harmless error); *Rogers v. United States*, 124 Fed. Cl. 757, 768 (2016) (determining that commander's inclusion of derogatory statements in endorsement statement that was not part of the record before a separation authority warranted reversal).

singular reference to the Federal Circuit's decision in *Tippett v. United States*, 185 F.3d 1250 (1999) in his reply brief to support his claim. ECF No. 27 at 21. He does not explain why *Tippett* applies. Once more, the Court parsed through his briefs to identify arguments that supported his claim. At its core, Mr. Robinson contends that Lt. Mehra's failure to forward his character statements and subsequent disappearance entitles him to a correction of his military records. ECF No. 23 at 16–17. Mr. Robinson also claims that Lt. Mehra established an attorney-client relationship with him, and her failure to advise him that his waiver was ineffective also entitles him to relief. ECF No. 27 at 22, 25–26. No analysis follows these assertions. At best, Mr. Robinson presented a skeletal argument in support of his ineffective assistance of counsel claim. *See Dunkel*, 927 F.2d at 956.

Since BCNR and both parties failed to identify what "ineffective assistance of counsel" means, this Court interprets Mr. Robinson's claim as one arising under the Sixth Amendment of the United States Constitution. *See* AR at 77. The Sixth Amendment provides that in "all *criminal prosecutions*, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." U.S. Const. Amend. VI (emphasis added). To establish a violation of this right, criminal defendants must prove: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment;" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[12] Because Mr. Robinson was the subject of an administrative separation rather than a criminal prosecution, he cannot receive Sixth Amendment protection.

"It is well settled that there is no constitutional or statutory right to effective assistance of counsel in a civil case." *Adams v. Vidor*, 12 Fed. App'x 317, 319 (6th Cir. 2001); *Pitts v. Shinseki*, 700 F.3d 1279, 1283 (Fed. Cir. 2012). This Court largely reviews ineffective assistance of counsel claims arising from court-martial charges and proceedings, which resolve criminal matters. *See Flowers v. United States*, 80 Fed. Cl. 201 (2008) (dismissing ineffective assistance of counsel claim because plaintiff entered into a plea agreement instead of facing court martial proceedings); *Scarseth v. United States*, 52 Fed. Cl. 458 (2002) (finding ineffective counsel when military counsel coerced a servicemember to resign from the Army Reserve in lieu of court-martial); *Moody v. United States*, 58 Fed. Cl. 522, 525 (2003); *Nicely v. United States*, 147 Fed. Cl. 727, 733 (2020), *aff'd*, 23 F.4th 1364 (Fed. Cir. 2022). As OJAG found, "there are no facts presented that indicate" Mr. Robinson's case involved criminal matters when he was *administratively* separated. AR at 29–31, 77. Indeed, Mr. Robinson did not face court-martial proceedings and failed to cite any legal authority of such claims being litigated in an administrative separation context. *See generally* ECF Nos. 23, 27. Therefore, his "vague assertions" do "not trigger further analysis." AR at 78.

Mr. Robinson's claim also cannot be saved under *Tippett*. ECF No. 27 at 21. There, an Army captain became entitled to relief after he relied on misinformation provided by his counsel during separation proceedings. *Tippett*, 185 F.3d at 945. But that case concerned an otherwise voluntary separation becoming involuntary due to misrepresentations, not an ineffective assistance of counsel claim. *See generally id.* In this instance, the Court agrees with BCNR that *Tippett* lacks

---

[12]   Mr. Robinson questioned why OJAG applied the ineffective assistance of counsel framework in *Strickland*. AR at 27. He failed to show that another standard should have been applied.

any "logical connection between that finding and the circumstances of this case." AR at 10.[13] The Court also refuses to apply an incorrect legal standard to suit Mr. Robinson's interests. *See Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1152 (Fed. Cir. 2007) ("Insofar as a finding is derived from the application of an improper legal standard to the facts, it cannot be allowed to stand."). And even if the Court adopted *Tippett's* logic, Mr. Robinson failed to identify any incorrect legal advice he received from Lt. Mehra. *See* AR at 10.

BCNR's analysis did not prejudice Mr. Robinson's case either. For instance, the Board held that Mr. Robinson's failure to file a complaint against Lt. Mehra to review her professional conduct undermines his claim. *Id.* BCNR further cited JAGINST 5803.1E[14] which outlines ethical rules similar to the Model Rules of Professional Conduct that JAGs must follow. *Id.* However, initiating proceedings at an attorney disciplinary body does not establish ineffective assistance of counsel. Such methods to hold attorneys accountable for their conduct are independent avenues of relief. *See Blake v. United States*, 161 F.4th 506, 513 (7th Cir. 2025) (distinguishing between ineffective assistance of counsel claims and complaints filed against attorneys for disciplinary reasons).

BCNR further held that Mr. Robinson "never had the right to representation by counsel during [his] administrative proceedings." AR at 10. In support, defendant agreed with the Board that Mr. Robinson's right to consult with Lt. Mehra differed from a broader right of representation. ECF No. 26 at 25. On these lines, while Lt. Mehra ceased communications with Mr. Robinson, she refrained from providing "legal representation to which [he was] not entitled." AR at 11. And by providing consultation to Mr. Robinson, she performed her duties in accordance with his NAVPERS rights. *Id.* at 10–11. When strictly construing the applicable regulations, evidence did support BCNR's finding that Lt. Mehra consulted with Mr. Robinson, though her alleged conduct could suggest that her actions exceeded that scope. But again, the context in which Lt. Mehra advised Mr. Robinson prevents further analysis as to whether she provided ineffective assistance of counsel. Although she stopped communicating with Mr. Robinson after making certain—albeit unsubstantiated—representations, the Court makes clear that Lt. Mehra's actions do not preclude Mr. Robinson from seeking relief through other causes of action.[15]

Therefore, the Court concludes that BCNR's analysis toward Mr. Robinson's ineffective assistance of counsel claim was not arbitrary and capricious.

---

[13]    Mr. Robinson also waited until his reply brief to raise this issue which also waives this argument. *See Abbott Lab'ys v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed. Cir. 2003).

[14]    JAGINST 5803.1E requires the Judge Advocate General ("JAG") of the Navy "to supervise the performance of legal services" throughout the Navy. *See* JAG Instruction 5803.1E (2015) at 1. This includes establishing "procedures for receiving, processing, and taking action on complaints of professional misconduct made against attorneys practicing under the supervision of the JAG. *Id.* at 1–2. Thus, it appears that JAG retains regulatory authority over such complaints related to attorney conduct.

[15]    The Court also takes no position as to the merits of Mr. Robinson's contention that Lt. Mehra's representations establish an attorney-client relationship. That also incudes BCNR's conclusion that Lt. Mehra provided effective assistance of counsel because Mr. Robinson began collecting character references. AR at 10.

**D. Mr. Robinson Never Raised or Developed Arguments Regarding BCNR's Injustice Analysis, Thereby Waiving this Issue.**

Lastly, BCNR concluded that an award of additional equitable relief was unnecessary. AR at 11. Since NDRB upgraded Mr. Robinson's characterization of service and changed his reason for separation, the Board held that NDRB "essentially eliminated the adverse consequences" of his misconduct. *Id.* In doing so, Mr. Robinson avoided reputational damage if had he remained enlisted which placed him "in a much better position professionally." *Id.* at 11–12. BCNR further noted that granting additional relief would create a financial windfall for Mr. Robinson for services not performed and commendations not earned. *Id.*

Once more, Mr. Robinson failed to provide a cognizable argument toward this issue in his briefs. *See generally* ECF Nos. 23, 27. Upon closer review, he appears to argue that BCNR arbitrarily concluded that his separation preserved his reputation. ECF No. 23 at 18. But he again does not expound on this argument and expects this Court to fill in the blanks on his behalf. *McIntosh v. Dep't of Def.*, 53 F.4th 630, 641 (Fed. Cir. 2022). The Court declines to do so.

Defendant raised arguments in support of BCNR's application of the Wilkie Memo. ECF No. 26 at 32–35. Indeed, the Wilkie Memo provides boards like BCNR and NDRB with criteria "in determining whether relief is warranted on the basis of equity, injustice, or clemency." AR at 285. "This guidance does not mandate relief," but provides comprehensive factors for a Board to consider when making its determination. *Id.* at 285–87. Since Mr. Robinson did not properly brief this issue and defendant seeks to maintain the status quo, the Court need not entertain this argument further. *See United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment) (providing rule that "points not argued will not be considered.").

Therefore, the Court refrains from answering whether BCNR improperly denied Mr. Robinson equitable relief under the Wilkie Memo.

## V.      CONCLUSION

For the foregoing reasons the Court concludes that BCNR did not arbitrarily and capriciously deny Mr. Robinson relief. Accordingly, the Court **GRANTS** the Navy's motion, ECF No. 26, and **DENIES** Mr. Robinson's motion, ECF No. 23. The Clerk of the Court is ordered to **ENTER JUDGMENT** in favor of the Navy consistent with this Order.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

17